# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BECKY R. SPRINGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-07-182-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Becky R. Springer requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied. *Hawkins v. Chater*, 114 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias* 933 F.2d at 800-801.

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to a listed impairment), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show she does not retain the residual functional capacity (RFC) to perform her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work she can perform existing in significant numbers in the national economy, taking into account the claimant's age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

## Claimant's Background

The claimant was born on December 31, 1957, and was 47 years old at the time of the administrative hearing. She has an eighth grade education and previously worked as a sales clerk. She alleges disability since July 1, 2002, because of chronic obstructive pulmonary disease ("COPD"), degenerative disc disease, bilateral carpal tunnel syndrome, status post right carpal tunnel release, left shoulder injury, depression, and anxiety.

## Procedural History

On March 29, 2004, the claimant filed her application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385, which was denied. ALJ Lantz McClain conducted both an initial and supplemental hearing and found the claimant was not disabled on October 26, 2006. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that the claimant had the residual functional capacity ("RFC") to perform a narrow range of sedentary work, *i. e.*, she could lift up to ten pounds, stand and/or walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday. The claimant was limited to only occasional bending and stooping and to simple repetitive tasks that involved only incidental contact with the public. She was to avoid work above shoulder level and concentrated exposure to dust or fumes (Tr. 21). The ALJ concluded that although the

claimant could not return to her past relevant work as a sales clerk, she was not disabled because there was work she could perform existing in significant numbers in the regional and national economies, *e. g.*, optical goods assembler and production assembler (Tr. 24-25).

## Review

The claimant contends that the ALJ erred: (i) by improperly evaluating the opinions of her treating physician Dr. Rao Sureddi, M.D.; and, (ii) by improperly evaluating the opinions of the medical expert Dr. Subramaniam Krishnamurthi, M.D. The Court finds these contentions dispositive.

The record reveals that Dr. Sureddi began treating the claimant as early as 1985 (Tr. 169) and continued to do so during the relevant period under review for benefits (Tr. 323-422, 512-17). He completed a physical medical source statement on the claimant in September 2005. Dr. Sureddi opined that the claimant could occasionally lift ten to twenty pounds, stand and/or walk for two hours in an eight-hour workday, sit for two hours in an eight-hour workday, and walk for three hours in an eight-hour workday. He found that even if the claimant were allowed a sit/stand option, she could not work an entire eight-hour day. Dr. Surredi further determined that the claimant had difficulty using her left hand for pushing and pulling arm controls and for fine manipulation. The claimant needed to elevate her legs at least every four hours. Dr. Sureddi commented that the claimant continued to have chronic back and neck pain with pain radiating down the left upper extremity and into the left lower extremity, and she suffered from respiratory problems related to her COPD. He concluded she was unable to hold any job (Tr. 564). Dr. Sureddi also completed a letter on

the claimant's behalf in June 2006, wherein he noted his treatment of the claimant over a fifteen-year period for multiple chronic health problems. He summarized those problems and then concluded the claimant was "totally disabled for any gainful employment." (Tr. 510-11).

Medical opinions from the claimant's treating physician are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [416.927].'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). Finally, if the ALJ decides to reject a treating physician's

opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300 [quotation omitted].

The ALJ concluded that Dr. Sureddi's opinion that the claimant was unable to work was not entitled to controlling weight because: (i) objective testing did not show that the claimant's back and neck problems were of "a totally disabling severity [, *i. e.*,] [n]o disc herniation is shown and the cord is not shown to be impinged[;]" (ii) Dr. Sureddi was only a general practitioner; and, (iii) Dr. Sureddi failed to consider the claimant's lack of compliance with recommended treatment, *e. g.*, Dr. Sureddi suggested the claimant stop smoking and see a neurosurgeon for her back and neck pain (Tr. 23).

The ALJ's evaluation of the opinion evidence from Dr. Sureddi was deficient for several reasons. First, although Dr. Sureddi's conclusion that the claimant was unable to work *was* in fact an issue reserved to the Commissioner, *see* 20 C.F.R. § 416.927(e)(1), (2) (noting that opinions that claimant is disabled or that an impairment meets or equals the requirements of any impairment in the Listing of Impairments "are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."), Dr. Sureddi also rendered opinions about the claimant's functional limitations in the medical source statement, which the ALJ was required to analyze under the standards set forth above. *See, e. g.,* 20 C.F.R. §

416.927(a)(2) ("Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of . . . impairment(s), including . . . symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and . . . physical or mental restrictions."). While the ALJ *did* mention that Dr. Sureddi had completed a medical source statement, he did not discuss any of the specific functional limitations imposed on the claimant by Dr. Sureddi or why he rejected them (Tr. 19, 22-23).

Second, the ALJ applied the wrong legal standard to evaluate the opinion evidence from Dr. Sureddi that he did discuss. Instead of determining whether Dr. Sureddi's opinion was "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record[,]'" *Langley*, 373 F.3d at 1119, *quoting Watkins*, 350 F.3d at 1300, the ALJ jumped straight into the application of the factors set forth in 20 C.F.R. § 416.927, which are usually applied only after the ALJ has determined the controlling weight issue and is deciding what weight, if any, to afford a treating physician's opinion. Thus, the ALJ essentially treated Dr. Sureddi as a non-treating physician without explaining why. *See, e. g., Hamlin v. Barnhart*, 365 F.3d 1208, 1223 (10th Cir. 2004) ("If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.") [citation omitted]. Further, although it is obvious the ALJ did not give controlling weight to Dr. Sureddi's opinions, it is unclear exactly what weight he did assign to those opinions (Tr. 22-23). *See, e. g., Watkins*, 350 F.3d at 1300 (noting that it must be "clear to any subsequent reviewers the weight [given] to the treating source's medical opinion and the reasons for that weight") [quotation omitted]. *See also*

*Langley*, 373 F.3d at 1120-21 (finding that the ALJ erred by failing to evaluate what lesser weight a treating physician's opinion should be given).

The ALJ committed other errors in analyzing Dr. Sureddi's opinions. For example, he noted that the claimant had not followed Dr. Sureddi's advice to stop smoking and see a neurosurgeon for her neck and back pain and that "Dr. Surredi [*sic*] does not indicate in any way that he took any of this into account when rendering his very pessimistic opinion that claimant was disabled." (Tr. 23). From these observations the ALJ apparently concluded that Dr. Sureddi did not in fact take into account the claimant's failure to follow his advice. But this was sheer speculation on the ALJ's part and therefore not proper analysis of Dr. Sureddi's opinions. *See, e. g., McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*.") [quotation omitted; emphasis in original]. Indeed, the conclusion that the claimant had failed to comply with Dr. Sureddi's treatment was itself speculative enough that the ALJ should have given one or both an opportunity to explain the circumstances. *See, e. g., Robinson v. Barnhart*, 366 F.3d 1078, 1083-84 (10th Cir. 2004) ("[T]he ALJ appears to have rejected Dr. Baca's opinion based upon his own speculative lay opinion that claimant failed to comply with prescribed treatment, an improper basis to reject the treating physician's opinion. . . . [T]he ALJ's speculative conclusion is procedurally and legally deficient because he did not make the findings necessary to deny the claim on the

basis of claimant's noncompliance with prescribed treatment, nor did he give claimant or her treating physician an opportunity to explain the specific reasons for her failure to take medications to determine if justifiable cause existed for her failure."), *citing* 20 C.F.R. § 416.930; Soc. Sec. Rul. 82-59, 1982 WL 31384.

The ALJ also failed to properly consider the opinions of Dr. Krishnamurthi regarding the claimant's functional limitations. Dr. Krishnamurthi completed interrogatories submitted to him by the ALJ in November 2005. He reviewed the claimant's medical records and determined that although she suffered from degenerative joint disease, chronic pulmonary disease, hypertension, arthritis of both knees, carpal tunnel syndrome, and anxiety and depression, she did not meet a listing under the Listing of Impairments. Dr. Krishnamurthi further opined that the claimant's functional ability was limited to the following: lifting and/or carrying five pounds frequently and ten pounds occasionally; standing and/or walking for a total of one hour in an eight-hour workday and 10-30 minutes at one time; and sitting for a total of six hours in an eight-hour workday and one hour at one time. He found that the claimant was further limited to only occasional bending, stooping, crawling, crouching, and reaching, and that she should avoid fumes and odors (Tr. 565-67). The ALJ adopted some of these limitations, *e. g.*, occasional lifting and carrying up to 10 pounds; sitting for six hours in an eight-hour workday; occasional bending and stooping; reaching limitations; and avoiding exposure to dust or fumes, but he rejected others without providing any explanation, *e. g.*, lifting and carrying on a frequent basis of only five pounds; sitting for only one hour at a time; standing and/or walking for only one hour per day and only 10-30 minutes at one

time; and occasional crawling and crouching. Such "picking and choosing" among Dr. Krishnamurthi's findings without appropriate analysis was erroneous. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984). *See also Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.").

The claimant argues that the ALJ's decision should be reversed if for no other reason than because the supplemental hearing transcript reflecting Dr. Krishnamurthi's testimony is frequently inaudible (Tr. 674-715). *See, e. g., Pratts v. Chater*, 94 F.3d 34, 37-38 (2d Cir. 1996) (where ALJ relied on expert's testimony and transcript thereof was inaudible, reviewing court could not say ALJ's decision was supported by substantial evidence). It is, however, unnecessary to reverse the Commissioner's decision on this basis, because the Court finds that the decision of the Commissioner must be reversed and the case remanded to the ALJ for proper analysis of the medical opinions of Dr. Sureddi and Dr. Krishnamurthi. The ALJ should, however, determine on remand whether the record is sufficient to permit full review of his treatment of the opinions of Dr. Krishnamurthi and take any necessary measures to ensure that it is.

**Conclusion**

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 26th day of September, 2008.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**